# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| C.W. by and through his next friend MARY DOE,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>STEVE SMITH, PIEDMONT CITY SCHOOL DISTRICT, and FICTITIOUS PARTY DEFENDANTS A through F, being that individual/entity who was/were responsible through either action or inaction for the physical harm caused to Minor Plaintiff C.W. on or around August 25, 2022  )<br>)<br>(These Fictitious Party Defendants are currently unknown to Plaintiff, or unascertained as party Defendants, and will be added by amendment pursuant to Ala.R.Civ.P. 9(h) once their identity is known.),  )<br>)<br>Defendants.  )  | Case No.: _____ |

## COMPLAINT

COMES NOW, Plaintiff, C.W., a minor, by and through his mother Mary Doe, files this complaint against Steve Smith, and minor Defendants A, B, C, D, E, F, and the Piedmont City School District, and, in support thereof, shows as follows:

1

## PARTIES

1. C.W. is under the age of nineteen (19) years and is a resident of Alameda County, Alabama. C.W. was a minor at the time the actions set out in the Complaint occurred.

2. Mary Doe is mother and next friend of minor Plaintiff, C.W. Mary Doe is above the age of nineteen (19) years and is a resident of Calhoun County, Alabama.

3. Steve Smith, upon present information and belief, is above the age of nineteen (19) and a resident of Calhoun County, Alabama.

4. Fictitious Party Defendants A through F being that individual, or those individuals, entity or entities who bear any responsibility, through either action or inaction, for the physical harm caused to minor Plaintiff C.W. on or about August 25, 2022.

5. A, B, C, D, E, and F, hereinafter collectively referred to as "Student Defendants."

6. Piedmont City School District is an entity doing business as Piedmont City Schools in Calhoun County, Alabama.

## JURISDICTION AND VENUE

7. This action is filed pursuant to 42 U.S.C. §§ 1983 and 20 U.S.C. §§ 1681 seeking redress of injuries suffered by Plaintiff C.W. from deprivation under color of state law, of rights secured by the FOURTEENTH AMENDMENT to the UNITED STATES CONSTITUTION. This action also claims violations of Alabama State law. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

8. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Alabama state law claims since these claims are so related to the claims in the § 1983 civil rights action that they form part of the same case and controversy.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and other applicable law because the cause of action arose in Calhoun County, Alabama, which is situated within the district and divisional boundaries of the Northern District of Alabama.

10. All conditions precedent to the filing of the instant Complaint has been satisfied.

## FACTS

11. Paragraphs 1 through 10 are incorporated herein as if set out in full.

12. Piedmont Middle School and Piedmont High School are governed by the Piedmont City School District and by the School Board. It receives federal funds for the education and welfare its students, including TITLE IX funds.

13. In addition to other sources of federal law requiring school officials to protect students from harassment, there are also applicable regulations under TITLE IX of the TITLE IX UNITED STATES EDUCATION AMENDMENTS of 1972, promulgated pursuant to 20 U.S.C. § 1681 et seq. *See* 34 C.F.R. Part 106. TITLE IX's regulations require all recipients to maintain grievance procedures to protect against sexual discrimination, harassment, and assault. The regulations also protect individuals from retaliation when they advocate for their own TITLE IX rights or the rights of others.

14. Steve Smith was the Head Football Coach and Athletic Director at Piedmont High School. He was directly responsible for protecting, supervising, disciplining students and players at Piedmont High School, including Plaintiff C.W. and the Student Defendants. At all times relevant hereto, Smith acted under color of state authority.

15. Plaintiff C.W. played football through Piedmont Middle and High School from fall of 2019 to the date of incident alleged in this complaint. He played for Coach Deerman at Piedmont middle, and Coach Smith for a short period at Piedmont High School.

16. On or around August 25th, 2022 Plaintiff C.W. was assaulted by six (6) students, (fellow football team players) in the fieldhouse locker room. As a result of a horrific initiation ritual that members of the Piedmont High School Football team attempted to conduct on him, Plaintiff C.W. transferred out of the school district. The facts of this incident and critical background information as laid out more fully *infra.*

## Background on "Keying Ritual"

17. The practice of 'keying' players (forcing a car or truck key into a player's anus and twisting it) as a means for team members to discipline, bully and humiliate other their teammates has been a long-standing practice in the Piedmont High School football program.

18. The longstanding history of this ritual, established a need for vigilance in "private" locker room spaces in which students could be isolated and subjected to it, specifically surrounding freshman students due to it being an "initiation" practice.

19. The origin of this practice is unknown as well as how many players have been 'keyed,' but it has been around long enough (years) and often enough (at least once per year) for the coaches, including Smith, to know of it and, if they had desired, put a stop to it.

20. For instance, in September of 2020, a former Piedmont High School football player and two other involved students were charged with third-degree assault for pinning down a junior member of their football team and inserting a key into his anus.

21. The assault that resulted in this arrest was known to Piedmont School District and to Steve Smith because both the District and Mr. Smith were defendants in a lawsuit filed on December 1st, 2020 by a John Doe Plaintiff. The allegations in that Complaint were very specific that a group of football players held down a player that was in eighth grade and assaulted him by

inserting a key into his anus. Yet, apparently nothing was done to protect football players from this practice of sexually assaulting another player in this manner.

22. Despite having this specific knowledge, being sued in federal court due to his knowledge, and undergoing criticism in previous matters for allowing these behaviors to occur within the football program, Coach Smith continued to fail at maintaining the safety and emotional wellbeing of his players, now and most notably, minor Plaintiff C.W.

### Plaintiff C.W. Joins the Piedmont Football Program

23. Plaintiff C.W. was a student in his 9th grade year at Piedmont High School in Calhoun County, Alabama in August of 2022

24. At the time of this incident of this matter Plaintiff C.W. was 15 years old and weighed approximately 130 pounds.

25. The incident occurred in the second week of school, shortly after Plaintiff C.W. joined the team.

26. A few days prior to the assault, Student Defendant A approached C.W. in the boy's bathroom, took ahold of his arm, and pulled him over to another Student Defendant (Minor Z), who had his pants forcibly pulled down.

27. The goal of this interaction was to force C.W. to look at Z's private parts, and call him "gay" for looking. This interaction made C.W. deeply uncomfortable and disturbed. He quickly left the bathroom upon breaking free Student Defendant A's grasp. However, it stands to establish a definitive history of inappropriate conduct directed at C.W. by the Student Defendant A leading up to the assault led by this same student, and his friends.

## August 25th, 2022 Assault

28. During 5th period, Plaintiff C.W. and the six (6) Student Defendants were in the field house locker room. The rest of the football team were watching film in class.

29. Plaintiff C.W. and the Student Defendants were instructed by Coach Smith to go work out instead of attending film class that day, for an unknown reason.

30. No coach or faculty member was present or supervising the field house locker room before, during of after the incident occurred.

31. One of the Student Defendants turned to C.W. and stated "we are going to initiate you" with a handful of keys in his hand. Plaintiff C.W., having knowledge of what these "initiation practices" entail said in response "no I am good on that", and fearfully walked to another side of the locker room.

32. The Student Defendants followed him, and were talking amongst themselves about "gay sex" and how Plaintiff C.W. should not worry because they had "gay family members".

33. As Plaintiff C.W. would not acknowledge them, they surrounded him, preventing him from exiting the space and took offensive positions. Student Defendant A still had his keys in hand.

34. Fearing that the Student Defendants were going to try and hold him down to "initiate" him, he attempted to escape, and tackled one of the Student Defendants to get away.

35. In his attempt to remove himself from the potentially horrific situation, Plaintiff C.W. was beaten up by the Student Defendants, outnumbered six to one.

36. Plaintiff C.W. sustained minor injuries and spoke to two other students about what had occurred. He did not have the opportunity to discuss it with Coach Smith that day.[1]

37. After informing his mother about the assault after he got home from school, she filed the police report. In asking for advice from the police department, as to what she could to protect her son from further harm they informed her to "remove him from the situation". There was a sentiment of hopelessness in the conversation, as it appeared the officer was under the impression (given the previous, similar instances that had occurred under Coach Smith), that no steps would be taken to resolve the issue within the school district.

38. The next morning the principal, Adam Clemons, called Plaintiff C.W. to his office for a meeting, including Coach Smith who were informed by C.W. as to what had occurred. In response, Principal Clemons and Coach Smith, called the involved Student Defendants to discuss.

39. Plaintiff C.W. had been the target of bullying throughout his time in middle school, and it was his understanding that he had a "target on his back" and "was not respected by anyone" especially in reference to the football players for quite some time. The football players would taunt him and made him uncomfortable by slapping his butt as they walked by him in the locker room.

40. After the locker room incident, he was continually made fun of in that not only did he "chicken out" of the ritual, but also reported what occurred to staff.

41. Coach Smith had a meeting with the football team the day following his meeting with the principal, C.W. and the minor defendants. In this meeting he talked about the "good old days" in that they were able to keep guns in their cars at school, had more freedom as highschoolers, etc. In this same line of speech, he addressed the group of young men and told them

---

[1] Photos of C.W.'s injuries are contained within the police report to be filed in this matter herein.

"you should not make fun of people that are easily offended," and looking at Plaintiff C.W. said "I am speaking in code." Everyone in the meeting knew that Coach Smith was referring to Plaintiff C.W.

42. Plaintiff C.W. was not only humiliated during, and after his fellow football team members tried to "initiate him" but was now being treated as if the assault was no big deal, and as Coach Smith stated to him during their initial meeting that he was, "taking it too seriously."

43. It is unfathomable how a student, who had a legitimate fear of being sexually assaulted, and was subsequently beat up, was simply given the impression that he was too sensitive, and offered no support. Instead, rumors about the event were spread around the school, subjecting C.W. to relentless teasing and bullying from the other students.

44. It is important to note that two of the Student Defendants involved are sons of Piedmont High School senior staff members, who were incentivized to "sweep the incident under the rug" for the continued attendance of their own children at Piedmont High School.

45. In working with the Piedmont Police Department the mother of Plaintiff C.W. was informed that the Student Defendants would be given a period of six (6) months of "observation" at that they would take action if "it happened again". This translates to the minor defendants essentially receiving six (6) months of unsupervised probation.

46. Given C.W.'s history of being subjected to bullying at Piedmont, the incident in the locker room was clearly the "last straw". Plaintiff C.W.'s family bore witness to C.W.'s decline in mood and enthusiasm for the football program leading up to the assault. Plaintiff C.W.'s family could no longer bear to keep him in such an environment that was not only physically, but emotionally damaging to him.

47. Following the police officers' advice to remove C.W. from the abusive high school environment, Mary Doe transferred Plaintiff C.W. to Spring Garden High School in Cherokee County, within the week.

48. Despite the comprehensive history of the football players targeting new freshman players, no actions were taken by Piedmont High School, or more specifically Coach Smith to ensure his players' safety. This non-action directly resulted in the injury of Plaintiff C.W. who was in his opinion, "thankfully only beat up by them," as he clearly believed the Minor Defendants intentions were to "key" him that day.

## CAUSES OF ACTION

## Count 1 –20 U.S.C. § 1681, et. seq.

### [Violation of Title IX]

49. Paragraphs 1 through 48 are incorporated herein as if set out in full.

50. TITLE IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681(a).

51. TITLE IX liability arises when a school district official is an appropriate person with the authority to take corrective measures in response to sufficient, actual notice of student on-student sexual harassment responds thereto with deliberate indifference and unreasonably in light of the known circumstances.

52. As alleged supra, Defendant Steve Smith and Defendant Piedmont City School District was on actual notice of the Student Defendants' habit and practice of continuously and repeatedly harassing and sexually assaulting students.

53. Student Defendants' sexual harassment of their fellow students was obvious, flagrant, rampant and of a continuous duration.

54. Smith, and Defendant Piedmont City School District had the authority to initiate corrective action in response to Student Defendants' sexual harassment, intimidation and assault of their fellow students or place other restrictions on Student Defendants.

55. Defendant Piedmont City School District, through the knowledge and inaction of Smith, acted with deliberate indifference to their sufficient, actual notice of the Student Defendants' sexual harassment, intimidation and assault of fellow students.

56. As a direct and proximate result of Piedmont City School District's deliberate indifference, Plaintiff was assaulted which caused personal injury and severe emotional distress, and has been denied educational opportunities and access. Plaintiff C.W. has been transferred out of Piedmont High School homeschooled as a result of this incident.

## Count I – 42 U.S.C. § 1983
### [Violation of Amendments to the U.S. CONSTITUTION]
**(Defendant Smith)**

57. Paragraphs 1 through 48. are incorporated herein as if set out in full.

58. Defendant Smith, individually and with final decision-making authority on behalf of the Piedmont City School District, violated Plaintiff's rights under 42 U.S.C. §1983 and his FOURTEENTH AMENDMENT EQUAL PROTECTION rights by failing to protect his from harassment, intimidation and sexual assault as Plaintiff was left alone and unprotected when he had actual notice of prior harassment via the 'keying' practice.

59. Defendant Smith acting or purporting to act under color of state law, intentionally and purposefully discriminated against Plaintiff depriving his of the rights guaranteed his by the

10

EQUAL PROTECTION rights found in the FOURTEENTH AMENDMENT to the U.S. CONSTITUTION, and his rights under 42 U.S.C. § 1983.

60. Defendant Smith's actions violated Plaintiff's clearly-established legal rights and were performed with malice and/or done with reckless disregard to the Plaintiff's federally-protected civil rights.

61. As a proximate consequence thereof, Plaintiff has been damaged as he has been caused to suffer physical injury, severe emotional distress, embarrassment, humiliation, anxiety, and concern.

62. Plaintiff is entitled to an award of compensatory and punitive damages against Defendant Smith in his individual capacities; that Defendant Smith actions were willful, wanton, and/or reckless or otherwise improper and egregious to a degree that it would require or otherwise substantiate the allowance of actual compensatory and punitive damages in an amount to be determined by the jury against Defendants.

### Count II – Negligence
### (Defendant Smith)

63. Paragraphs 1 through 48 are incorporated herein as if set out in full.

64. Standing *in loco parentis*, Defendant Smith owed a duty to all students at Piedmont High School, including Plaintiff C.W., to act in a reasonably prudent manner when executing his their duties as an employee of Piedmont High School to supervise, discipline, suspend and expel students who pose a real and immediate danger to their fellow students and to protect its students from harassment, intimidation and assault.

65. Defendant Smith negligently breached his duties to Doe by failing to supervise, discipline, suspend and/or expel Student Defendants despite their his knowledge of their habit and practice of continuously and repeatedly harassing and threatening to sexually assault Plaintiff.

11

66. Defendant Smith negligently breached his duties to C.W. by refusing to comply with federal law and keeping in place a proper policy regarding harassment by students at school and failing to properly implement the policy when specifically notified that harassment was taking place.

67. As a direct and proximate result of the negligence of the Defendant Smith, Plaintiff C.W. was assaulted which caused his personal injury and severe emotional distress.

### Count III –Recklessness/Wantonness
### (Defendant Smith)

68. Paragraphs 1 through 48 are incorporated herein as if set out in full.

69. Standing *in loco parentis*, Defendants Smith owed a duty to all students at Piedmont High School, including Plaintiff C.W., to act in a reasonably prudent manner when executing his duties as employees of Piedmont High School to supervise, discipline, suspend and expel students who pose a real and immediate danger to their fellow students and to protect its students from harassment, intimidation and assault.

70. Defendants Smith recklessly and/or wantonly breached his duty to Plaintiff C.W. by failing to properly supervise, discipline, suspend and/or expel Student Defendants despite his their knowledge of Student Defendant's continuous habit and practice of continuously and repeatedly harassing Plaintiff C.W.

71. As a direct and proximate result of the recklessness and/or wantonness of Defendant Smith, Plaintiff C.W. was assaulted which caused his personal injury and severe emotional distress.

## Count IV – Negligence
### (Student Defendants)

72. Paragraphs 1 through 48 are incorporated herein as if set out in full.

73. Student Defendants owed a duty to Plaintiff Doe to act in a with regard to actions which would cause harm.

74. Student Defendants negligently breached this duty to Doe by assaulting Plaintiff thereby causing him harm.

75. As a direct and proximate result of the negligence of the Defendant Smith, Plaintiff C.W. was assaulted which caused his personal injury and severe emotional distress. However, this damage may have been an unintentional consequence of Student Defendants' negligent conduct.

## Count V – Recklessness/Wantonness
### (Student Defendants)

76. Paragraphs 1 through 48 are incorporated herein as if set out in full.

77. Student Defendants owed a duty to Plaintiff C.W. to act in a with regard to actions which would cause harm.

78. Student Defendants recklessly and/or wantonly breached this duty to C.W. by assaulting Plaintiff thereby causing him harm.

79. As a direct and proximate result of the recklessness and/or wantonness of the Defendant Smith, Plaintiff C.W. was assaulted which caused his personal injury and severe emotional distress. However, this damage may have been an unintentional consequence of Student Defendants' reckless conduct.

### Count VI – Tort of Outrage
### [a.k.a. Intentional/Reckless Infliction of Emotional Distress]
### (Student Defendants)

80. Paragraphs 1 through 48 are incorporated herein as if set out in full.

81. As alleged supra, Student Defendants' conduct was intentional and/or reckless, extreme and outrageous and utterly intolerable in a civilized society.

As a direct result of Student Defendants' conduct, Plaintiff C.W. was assaulted which caused him personal injury and severe emotional distress.

### Count VII – Assault
### (Student Defendants)

82. Paragraphs 1 through 48 are incorporated herein as if set out in full.

83. Student Defendants assaulted Plaintiff by causing offensive and unwanted contact to Plaintiff's person and thereby committed a "trespass to person" as the phrase is used in ALA. CODE § 6-2-34(1).

84. As a direct result of Student Defendants' conduct, Plaintiff C.B. was assaulted which caused him personal injury and severe emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff C.W. requests this Court enter an Order which will:

a. Declare the conduct engaged in by the Defendants to be in violation of Plaintiff C.W.'s Constitutional rights and Alabama law;

b. Enter appropriate declaratory and injunctive relief;

c. Award Plaintiff C.W. compensatory damages against the Defendants, in an amount that will fully compensate him for the physical injuries, mental distress, anguish, pain, humiliation, embarrassment, suffering and concern that he has suffered as a direct and/or proximate result of the statutory and common law violations as set out herein;

d. Enter a judgment against all Defendants, for such punitive damages as will properly punish them for the constitutional, statutory and common law violations perpetrated upon Plaintiff as alleged herein, in an amount that will serve as a deterrent to Defendants and

others from engaging in similar conduct in the future;

e. Award Plaintiff C.W. prejudgment and post-judgment interest at the highest rates allowed by law;

f. Award Plaintiff C.W. costs, expert witness fees, and reasonable attorney's fees;

g. Assume continuing and indefinite jurisdiction to ensure compliance with the terms of the Orders requested herein;

h. Award Plaintiff C.W. such other and further relief, including equitable, that this Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by struck jury.

Submitted this the 22nd day of March 2023.

/s/ *Teri R. Mastando*
Eric J. Artrip (ASB-9673-I68E)
Teri R. Mastando (ASB-4507-E53T)
MASTANDO & ARTRIP, LLC
301 Holmes Ave NE, Suite 100
Huntsville, Alabama 35801
Telephone:   (256) 532-2222
Facsimile:   (256) 513-7489
*artrip@mastandoartrip.com*
*teri@mastandoartrip.com*

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL AT:**

**Steve Smith**
**c/o Westbrook Christian School**
**100 Westminster Dr.**
**Rainbow City, Alabama 35906**

**Piedmont Board of Education**
**502 Hood Street West**
**Piedmont, AL 36272**

/s/ *Teri R. Mastando*
Teri R. Mastando