IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| C.W. by and through his next friend MARY DOE, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No: 1:23-CV-00368-CLM |
| STEVE SMITH, PIEDMONT CITY SCHOOL DISTRICT, ) ) ) | |
| Defendants. ) | |

**DEFENDANT STEVE SMITH'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

COMES NOW the Defendant identified as Steve Smith and respectfully moves the Court to dismiss all claims against him. As grounds, the Defendant shows as follows:

I. **The Allegations Of The First Amended Complaint Do Not Establish A Constitutional Violation.**

The second count of the First Amended Complaint (Doc. 26, "Complaint") is designated "Count I" and alleges under 42 U.S.C. § 1983 that Steve Smith violated the Plaintiff's 14th Amendment right to equal protection "by failing to protect his [sic] from harassment, intimidation and sexual assault as Plaintiff was left alone and unprotected." (Doc. 26, p. 10). Coach Smith denies that the incident claimed by the

Plaintiff occurred as alleged. But even if the allegations were proved, they would not establish a violation of the United States Constitution by Steve Smith. There is no constitutional right to protection by the state or state officials from third parties. "Count I" of the Complaint must be dismissed.

In *Worthington v. Elmore County Bd. of Educ.*, 160 Fed. App'x. 877 (11th Cir. 2005), the 11th Circuit Court affirmed a judgment as a matter of law in favor of the school board for claims that the board failed to protect a special education student from alleged sexual assaults by another student on the school bus. The Court stated:

> We note at the outset that the Board could be liable only if it owed some duty to protect J.W. from third-party assaults. See *Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 568-69 (11th Cir.1997). ...
>
> This Court has previously explained that public schools generally do not have the requisite level of control over children to give rise to a constitutional duty to protect them from third-party actors. See *Wyke*, 129 F.3d at 569; see also *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect ....'") (citations omitted). "By mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily." *Wyke*, 129 F.3d at 569.

160 Fed.Appx. at 881. The 11th Circuit in *Worthington* rejected the plaintiff's contention that the student was in a "special relationship" to the school board "because he was forced to attend a special school for children with learning

disabilities and behavioral problems, forced to ride the bus, and suffered from known mental, emotional, and behavioral disabilities making him dependent on the Board for safety," and it concluded, "[w]e do not believe that these factors created a special relationship or a duty on the part of the Board to protect J.W. from third parties. Thus, even if the Board acted with deliberate indifference, there was no constitutional violation*." Id.* The Court previously reached the same conclusion in *Wright v. Lovin*, 32 F. 3d 538 (11th Cir. 1994), noting:

> To date, every federal circuit court of appeal to address the question of whether compulsory school attendance laws create the necessary custodial relationship between school and student to give rise to a constitutional duty to protect students from harm by non-state actors has rejected the existence of any such duty. ... Therefore, we hold that [the student's] voluntary school attendance did not create a custodial relationship between himself and the school sufficient to give rise to a constitutional duty of protection.

32 F. 3d at 540. See also *Griffin v. Troy State Univ.*, 128 Fed. Appx. 739 (11th Cir. 2004) (upholding dismissal of §1983 claims against university officials in an individual capacity for failing to protect a student, due to the absence of any duty of protection.)[1] C.W. had no right to be protected from fellow students by Coach Smith, and the Complaint thus fails to allege violation of a constitutional right.

---

[1] The district court in *Griffin v. Troy State* dismissed the claims against officials individually based on qualified immunity, finding that the plaintiffs had not satisfied their burden to show that the defendants' conduct violated a constitutional right. 128 Fed. App'x. 739, 741.

3

To establish a § 1983 equal protection claim, C.W. must also show he was situated similarly with other persons who were treated differently than he and that the different treatment was based on some constitutionally protected interest. See *Damiano v. Florida Parole and Probation Comm'n.*, 785 F.2d 929, 932-33 (11th Cir. 1986). Because C.W. alleges violation of a right to protection from fellow students – a right which does not exist – and does not allege he was treated differently because of membership in a protected class of persons, his equal protection claim must fail.

"[E]qual protection principles require generally that government officials behave in a way such 'that all persons similarly situated should be treated alike.' *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). Thus, in order to establish a claim cognizable under the Equal Protection Clause, a plaintiff must allege that he was similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race, . . . or some other constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001)." *C & J Assocs. Pest Control v. Hornsby*, 2006 WL 3832819, *7 (M.D. Ala. Dec. 28, 2006). There is no allegation in this case that Coach Smith treated C.W. differently from any similarly-situated student because of C.W.'s race or gender or any other constitutionally protected interest. C.W. alleges the incident was an "initiation ritual that members of the Piedmont High School

4

Football team attempted to conduct on him." (Doc. 26, p. 3, ¶ 14). He does not contend the alleged ritual targeted only players of a certain race or religion or other protected characteristic. Because there are no factual allegations that, if proved, would show C.W. was treated disparately on the basis of a protected classification, the equal protection claim fails to state grounds for relief and is due to be dismissed.

**II.     Because The Alleged Facts Do Not Show A Violation Of Any Constitutional Right, The Defendant Is Entitled To Qualified Immunity.**

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Griffin v. Troy State Univ.*, 128 F. App'x. 739, 740 (11th Cir. 2005)(citation omitted). "In order to receive qualified immunity, a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* When a defendant establishes his entitlement to immunity, "the burden shifts to the plaintiff to prove that qualified immunity is not warranted." *Id.* at 741. "The Supreme Court has articulated a two-prong test to aid in this analysis. First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Second, if a constitutional right would have been violated under the plaintiff's version of the facts,

the next, sequential step is to ask whether the right was clearly established." *Id.* (Internal quotation marks, alterations and citations omitted). "In this Circuit, only the caselaw of the Supreme Court, the Eleventh Circuit or the law of the highest court of the state where the events took place . . . can 'clearly establish' constitutional rights. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001)." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009).

C.W. alleges in the Complaint that Steve Smith was the Head Football Coach and Athletic Director at Piedmont High School and "was directly responsible for protecting, supervising, disciplining students and players at Piedmont High School." (Doc. 26, p. 3, ¶ 12). C.W. alleges further that "[a]t all times relevant hereto, Smith acted under color of state authority." *Id.* Because there is no constitutional right to protection from third parties, the facts alleged, even if proved, fail to establish a constitutional violation. The Plaintiff cannot satisfy the first prong of the qualified immunity test, and the claims against Coach Smith must be dismissed.

The 11th Circuit Court has explained that to determine if an official was acting within his discretionary authority, courts "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004). "A government official acts within his or her

discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of his authority." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.2d 1176, 1185 n. 17 (11th Cir. 1994).

C.W. alleges the incident in this lawsuit occurred in the Piedmont High School field house locker room during football activities under Coach Smith's supervision. (Doc. 26, p. 3, ¶¶ 13, 14). He also alleges "[a]t all times relevant hereto, Smith acted under color of state authority." (Doc. 26, p. 3, ¶ 12). An official is performing a legitimate job-related function if he was "performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Holloman v. Harland*, 370 F.3d at 1266 (bracketed letters added). The Court held in *Holloman v. Harland*, as a matter of law, that supervising students is within a public school teacher's discretionary authority. *Id*. at 1267. If the issue is even contested by the Plaintiff, Coach Smith clearly was performing a job-related function and acted within the scope of his authority as a school official in supervising student athletes.

C.W.'s only claim against Coach Smith is that he failed to prevent other students under his supervision from allegedly assaulting, or attempting to assault, C.W. "For a supervisor to be liable under § 1983, his or her liability must be based

on something more than the theory of respondeat superior. Under § 1983, supervisory official liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1315 (M.D. Ala. 2000) (quotation marks and citation omitted). C.W. does not claim Coach Smith participated in the alleged incident. In fact, he says "[n]o coach or faculty member was present or supervising the field house locker room before, during or after the incident occurred." (Doc. 26, p. 5, ¶ 29). C.W. does not claim the coach knew in advance that the incident was going to occur. Even if the statements in the Complaint could be construed to allege sufficiently a violation of a constitutional or legal right, no decision of the U.S. Supreme Court, the Eleventh Circuit Court of Appeals or the Alabama Supreme Court holds that school officials must maintain constant visual contact with all students at all times. To the contrary, the Alabama Supreme Court recognizes "[t]here is just no way that a teacher can give personal attention to every student all of the time. The fact that each student is not personally supervised every moment of each school day does not constitute fault on the part of the School Board or its employees." *Stevens v. Chesteen*, 561 So.2d 1100, 1102–03 (Ala. 1990) (quoting *Banks v. Terrebonne Parish School Board*, 339 So.2d 1295, 1297 (La. App. 1976), further quoting *McDonald v. Terrebonne Parish School*

*Board*, 253 So.2d 558, 562 (La. App. 1st Cir.1971)). See also *Faulkner v. Patterson*, 650 So.2d 873, 875 (Ala. 1994) (teacher supervising day camp activities sponsored by board of education "could not reasonably be expected to be providing individual attention to every single camp child at that moment, given the demanding circumstances of working with a group of children" and was therefore entitled to immunity); and *Coyle v. Harper*, 622 So.2d 302, 303 (Ala.1993) (teacher was immune from liability for alleged negligent supervision of a student who was injured inside the teacher's classroom while the teacher was monitoring the hall during change of classes). The injured student in *Stevens v. Chesteen* was 14 years old, a year younger than C.W. says he was at the time of the incident he alleges. 561 So.2d at 1101; Doc. 26, p. 5, ¶ 23. The student in *Coyle v. Harper* also was a middle school student (622 So.2d at 302), and the injured student in *Faulkner v. Patterson* was only 6 years old. 650 So.2d at 874. The students who allegedly attacked C.W. were "fellow football team players" presumably the same age as C.W. or older, and were reasonably expected to follow school rules and instructions from the coaches even when the coaches were in another room. No authority required Coach Smith to maintain constant visual observation of C.W. and the other players, so the second

prong of the qualified immunity analysis also requires a judgment in the Defendant's favor as a matter of law.[2]

### III. **Because There Is No Viable Federal Claim, All State Law Claims Should Be Dismissed.**

Count II alleges Coach Smith negligently breached a duty to supervise, discipline, suspend and/or expel students who allegedly assaulted C.W. (Doc. 26, p. 11, ¶ 68).[3] Count III claims the same breach was committed recklessly or wantonly. (Doc. 26, p. 12, ¶ 73). Because C.W.'s factual allegations fail to establish a viable federal claim, the state claims should be dismissed.

The U.S. Supreme Court has instructed federal district courts to dismiss state law claims when all federal claims are disposed of:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

---

[2] In the event this motion is denied, the Defendant reserves the right to reassert qualified immunity and State-agent immunity defenses at a later stage of the litigation, in a motion for a summary judgment or other appropriate dispositive motion.

[3] Only the Board of Education has authority to suspend or expel students. *See Adams v. City of Dothan Bd. of Educ.*, 485 So. 2d 757, 759 (Ala. Civ. App. 1986) ("case law has recognized the inherent authority of school boards to suspend or expel students when necessary to maintain order and discipline in the schools.") *See also* § 16-1-14, Ala. Code.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  The Eleventh Circuit Court noted in *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F. 2d 414 (11th Cir. 1984) "[p]endent jurisdiction is a matter of discretion, not of plaintiff's right. The decision to entertain or dismiss the pendent state claims continues throughout the proceeding." *Id*. at 427 (citations omitted).  The Court also explained:

> The district court's discretionary decision whether or not to entertain pendent state claims is generally guided by four factors: (1) whether the state law claims predominate in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedies sought; (2) whether comity considerations warrant determination by a state court (i.e., is the state claim novel or particularly complex such that an accurate definitive interpretation of state law is necessary); (3) whether judicial economy, convenience, and fairness to the litigants would best be served by trying the federal and state claims together; and (4) whether the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.

735 F. 2d at 428 (quotation marks and citation omitted). The Court pointed out in *Draper v. Wheelabrator-Frye* that a district court might properly find the first of the foregoing factors to warrant dismissal of state claims even well after the pleading stage.  735 F.2d at 428.  The allegations of the Complaint in this case fail to establish any violation of federal constitutional rights. The alleged facts C.W. must prove to establish assault, negligence or wantonness are the same facts his equal protection claim is based on.  Therefore state law claims predominate in terms of proof, scope of issues and remedies and the Court should decline pendent jurisdiction.

11

The 11th Circuit said in *Draper v. Wheelabrator-Frye* "[i]ndeed, if the federal claims are dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* [, 383 U.S. 715 (1966)] strongly encourages or even requires dismissal of the state claims." 735 F.2d at 428. "To exercise pendent jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Id*. at 427 (citations omitted). Because C.W.'s factual allegations, if proved, are not sufficient to support an equal protection claim, the Court should decline jurisdiction over the state law claims and Coach Smith should be dismissed as a Defendant.

## IV.     The Claims For Negligence, Recklessness Or Wantonness Are Barred By State-Agent Immunity.

Count II alleges negligence and Count III alleges recklessness and wantonness by Coach Smith arising from his supervision of students in a public school. (Doc. 26, pp. 11-12). Because the Defendant is entitled to State-agent immunity from tort liability while performing his official duties, and the facts alleged in the Complaint do not show any exception to immunity, Counts II and III are due to be dismissed.

"Article I, §14, Ala. Const. (1901), provides 'That the State of Alabama shall

not be made a defendant in any court of law or equity.' This is the basis for the doctrine of sovereign immunity." *Louviere v. Mobile County Bd. of Educ.*, 670 So.2d 873, 877 (Ala. 1995). "[M]unicipal boards of education are not agencies of municipalities, but agencies of the state, 'empowered to administer public education within the cities.' *Enterprise City Board of Education v. Miller*, 348 So.2d at 783, 784. Therefore, they enjoy immunity from tort liability." *Hutt v. Etowah Cty. Bd. of Educ.*, 454 So.2d 973, 974 n.2 (Ala. 1984). Persons acting as agents of a board of education share in the State's sovereign immunity if the act complained of was committed while they were exercising judgment in performing official duties.

The Alabama Supreme Court held in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000):

> A state agent *shall* be immune from civil liability when the conduct made the basis of the claims against the agent is based upon the agent's
>
> . . .
>
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Id.* at 405. "Generally, state agents are afforded immunity from civil liability when the conduct made the basis of the claim is based on the exercise of judgment in supervising and educating students." *Ex parte Nall*, 879 So.2d 541, 544 (Ala. 2003).

"Educating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process." *Ex parte Trottman*, 965 So.2d 780, 783 (Ala. 2007). It is undisputed that the incidents alleged in this lawsuit occurred while C.W. and other students were enrolled at Piedmont High School, during school hours. Coach Smith was at all times performing his official duties as football coach and athletic director for supervising and educating student athletes. "There is no exception under *Cranman* for 'tortious' conduct unless the State agent 'acts willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law.' *Cranman,* 792 So.2d at 405." *Ex parte Nall*, 879 So.2d at 546. Because the Defendant was performing official supervisory duties within the categories of conduct described in *Ex parte Cranman,* and C.W. has not alleged any facts that, if proved, would establish an exception to State-agent immunity, the Defendant is entitled to immunity and the claims for negligence, recklessness and wanton conduct are due to be dismissed.

## V.     The Complaint Seeks Relief That Is Not Available.

The Complaint seeks unspecified "declaratory and injunctive relief." (Doc. 26, p. 12, ¶ b). Nowhere does C.W. state specifically what relief he is requesting, so the demand must be dismissed because it seeks an impermissible "obey-the-law"

injunction and fails to specify adequately what the Plaintiff is requesting that the Defendant be ordered to do or not to do.[4]

In *S.E.C. v. Smyth*, 420 F.3d 1225 (11th Cir. 2005), the 11th Circuit Court observed:

> This Circuit has held repeatedly that "obey the law" injunctions are unenforceable. *See e.g. Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999) (holding that injunction which prohibited municipality from discriminating on the basis of race in its annexation decisions "would do no more than instruct the City to 'obey the law,'" and therefore was invalid); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 899 (5th Cir. 1978) (invalidating injunction that prohibited defendant from violating Title VII in its employment decisions).

*Id*. at 1233, fn 14. The Court noted further, "[t]he specificity requirement of Rule 65(d) is no mere technicality; [the] command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order. An injunction must be framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law." *Id*. (First alteration added. Quotation marks and citation omitted). The vague demand for injunctive relief in this case is exactly what Rule 65, Fed. R. Civ. P. proscribes.

---

[4] In making this argument, the Defendant does not imply that there is any proper basis for injunctive or declaratory relief.

In addition, Steve Smith in an individual capacity has no authority and owes no duty to provide any form of injunctive relief. Whatever injunctive relief the Plaintiff is seeking could be afforded him only by the Piedmont City Schools. *See Ingle v. Adkins*, 256 So.3d 62, 66 (Ala. 2017) ("we hold that the circuit court properly dismissed the claims against Adkins and the Board members in their individual capacities because 'a suit for injunctive relief against a State official in his or her individual capacity would be meaningless. This is so, because State officials act for and represent the State only in their official capacities.' *Ex parte Dickson*, 46 So.3d 468, 474 (Ala. 2010).") *See also Ohio Valley Conf. v. Jones*, No. SC-2022-0930, 2023 WL 3559583, at *19 (Ala. May 19, 2023) (ruling that claims against university officials in an individual capacity seeking injunctive relief were properly dismissed). As a practical matter, Coach Smith retired and is no longer employed by the Piedmont City Schools. He could not provide injunctive relief even in an official capacity. The Complaint fails to state any valid claim for injunctive relief and the demand is due to be dismissed.

WHEREFORE, Defendant Steve Smith respectfully moves to dismiss all claims against him.

/s/ Clay R. Carr
Mark S. Boardman (ASB-8572-B65M)
Clay R. Carr (ASB-5650-C42C)
BOARDMAN, CARR, PETELOS, WATKINS,
  & OGLE, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
Telephone:  (205) 678-8000
Facsimile:  (205) 678-0000

***Attorneys for Defendant Steve Smith***

## CERTIFICATE OF SERVICE

I do hereby certify that on **July 20, 2023**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system which will send notification of such filing to all Counsel of record.  If any of the following are not registered with the CM/ECF electronic filing system, I certify that a copy will be served by mailing a copy of the same by United States Mail, properly addressed and first class postage prepaid, to wit:

Teri Ryder Mastando, Esq.
Eric J. Artrip, Esq.
MASTANDO & ARTRIP, LLC
301 Holmes Avenue, NE, Suite 100
Huntsville, Alabama 35801
teri@mastandoartrip.com
artrip@masstandoartrip.com

Taylor P. Brooks, Esq.
LANIER FORD SHAVER & PAYNE P.C.
2101 Clinton Avenue West, Suite 102
P.O. Box 2087
Huntsville, AL 35804
tpb@lanierford.com

/s/ Clay R. Carr
OF COUNSEL